UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK WALKER,

                          Plaintiff,

               -against-

AHMIR THOMPSON, TARIK TROTTER,
SHAWN GEE, TRUER NOTES, INC., GRAND
NEGAZ INC., THE ROOTS ON TOUR, INC.,
OKAY TOURS, LLC, and SPORTS &
ENTERTAINMENT FINANCIAL GROUP,
LLC,

                         Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/20/2019

17 Civ. 6240 (AT)

**AMENDED ORDER**[1]

ANALISA TORRES, District Judge:

       This case arises from the termination of Plaintiff, Frank Walker, from his position as a

drummer for the hip hop and neo-soul band The Roots.  Plaintiff brings this action against

Defendants, Ahmir Thompson, Tarik Trotter, Shawn Gee, Truer Notes, Inc., Grand Negaz

Inc., The Roots on Tour, Inc., Okay Tours, LLC, and Sports & Entertainment Financial

Group, LLC, who are his former band members and employers.  Compl., ECF No. 16.

Plaintiff alleges that Defendants used his likeness in the band's promotional materials in

violation of the Lanham Act, 15 U.S.C. § 1125(a), and New York Civil Rights Law § 51.  *See*

*id.* ¶¶ 106–131.  Plaintiff further alleges that Defendant Gee, the band manager, breached

fiduciary duties of care, loyalty, and good faith that he owed Plaintiff.  *Id.* ¶¶ 132–137.

       By order dated August 10, 2018 (the "Order"), the Court granted in part and denied in

part Defendants' motion to dismiss, dismissing all claims except Plaintiff's Lanham Act and

New York Civil Rights Law claims.  Order, ECF No. 53.  The Court also denied Plaintiff's

motion for leave to amend.  *Id.*  On December 27, 2018, the parties cross-moved for summary

---

[1] This order partially vacates and amends the Court's order dated August 10, 2018, docketed at ECF No. 53.

judgment.  ECF No. 69 (Defendants' motion); ECF No. 71 (Plaintiff's motion).  For the

reasons stated below, a portion of the Order is VACATED and AMENDED as set forth below,

and the parties' cross-motions for summary judgment are DENIED without prejudice to

renewal.

**BACKGROUND**[2]

I.      Factual Background

        In 2002, Plaintiff began performing with The Roots as a percussionist.  Compl. ¶¶ 21,

67.  In March 2009, The Roots became the in-house band for Late Night with Jimmy Fallon

("Late Night") on the NBC network.  Id. ¶ 43.  On the night The Roots were scheduled to

premiere on Late Night, shortly before airtime, Plaintiff was handed an agreement (the

"Agreement") with Defendant Truer Notes, Inc. to perform in all of The Roots' performances,

including on Late Night, for the following 12 months.  Id. ¶¶ 40–41, 59.  Plaintiff signed the

Agreement.  Id. ¶ 74.  Under paragraph 4, Plaintiff granted Defendants

> the worldwide right in perpetuity to use and publish and to permit others to use and
> publish [Plaintiff's] name, likeness, voice and other biographical material in
> connection with [Plaintiff's] services and performances hereunder and the results
> and proceeds thereof, including without limitation [Plaintiff's] name, photograph,
> image and likeness in connection with any audio or video recordings.

Agreement ¶ 4, ECF No. 16-1.

        Plaintiff continued to perform with The Roots until March 2017—both on Late Night

until it ended in 2013, and then on The Tonight Show with Jimmy Fallon (the "Tonight

Show"), which began on NBC shortly thereafter.  Compl. ¶¶ 43–44, 67.  He also contributed

to a number of sound recordings for The Roots.  Id. ¶ 68.  By letter dated May 11, 2017,

Defendant Thompson fired Plaintiff from The Roots.  Id. ¶ 72.  Following Plaintiff's

---

[2]  The Court presumes familiarity with the facts and procedural history, which are set forth in the Order, and,
therefore, only summarizes the relevant background here.  See Order at 2–4.

termination, Defendants continued to use his likeness in promotional materials for concerts without his consent. *Id.* ¶¶ 76, 79. Plaintiff did not receive compensation for the use of his likeness or for his contribution to The Roots' sound recordings. *Id.* ¶ 82.

II.     Procedural Background

On December 27, 2017, Defendants moved to dismiss the complaint, ECF No. 29, and in the Order, the Court dismissed all claims except Plaintiff's claims for misappropriation under the Lanham Act and New York Civil Rights Law. The Court found that "the Agreement grants Defendants the right to use Plaintiff's likeness 'in perpetuity' only if the use is 'in connection with [Plaintiff's] services and performances hereunder.'" Order at 9 (quoting Agreement ¶ 4). Based on that interpretation, the Court held that Plaintiff's allegations "that the Defendants in this action are using his likeness to promote performances in which he took no part" are "sufficient to state false endorsement claims under federal and state law." *Id.* at 10. The Court, therefore, denied Defendants' motion to dismiss the Lanham Act and New York Civil Rights Act claims. *Id.*

Then, on December 27, 2018, the parties filed cross-motions for summary judgment. ECF Nos. 69, 71. Defendants argue that Plaintiff's remaining claims under the Lanham Act and New York Civil Rights Law are barred by the Agreement, which "granted the [] Defendants [] the right to use Plaintiff's likeness *in perpetuity* in any promotional materials that were created while Plaintiff was performing his services with The Roots." ECF No. 70 at 15. In opposition, Plaintiff argues that "the Court has already rejected Defendant[s'] argument with respect to the perpetuity language, as the Court previously held in response to the Defendants' initial motion to dismiss that the [Agreement] only grants the Defendants the right to use Plaintiff's likeness in perpetuity only if the use is in connection with Plaintiff's services and performances hereunder

and not to promote performances and concerts in which he did not perform." ECF No. 79 at 9–10 (internal quotation marks omitted).

For the following reasons, that portion of the Order which held that the Agreement grants Defendants the right to use Plaintiff's likeness in perpetuity only if the use is in connection with Plaintiff's services and performances, Order at 9–10, is VACATED and AMENDED as follows.

## DISCUSSION

I.    <u>Legal Standard</u>

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment, whether they be oral[] or written, and there is no provision in the rules or any statute that is inconsistent with this power." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (citations omitted). Because this order amends the Court's previous order on Defendants' motion to dismiss, the Court will use the standard which governs motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

"On a motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010). However, the mere fact that the parties disagree on the proper interpretation of the contract does not render the contractual language ambiguous. *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).[3]

## II.   Analysis

Section 43(a) of the Lanham Act prohibits misappropriation of a person's name or

---

[3] Without addressing the choice of law issue, the parties apply New York law to their arguments about whether Plaintiff consented to Defendants' use of his likeness under the Agreement. *See* ECF No. 77 at 14–19; ECF Nos. 72, 79. The Agreement, however, contains a Pennsylvania choice of law clause. Agreement ¶ 6. "Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." *Holborn Corp. v. Sawgrass Mut. Ins. Co*., 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018). Declining to engage in a choice of law analysis is especially appropriate here, where the parties have failed to brief the question and applied New York law without analysis. As such, and given that the standards are similar, the Court applies New York law to interpret the Agreement. *See, e.g.*, *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (stating that "Pennsylvania contract law begins with the firmly settled point that the intent of the parties to a written contract is contained in the writing itself" and "[a] contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction" (internal quotation marks and citations omitted)).

likeness that is "likely to cause confusion" about that person's association with a product or service.  *Chambers*, 282 F.3d at 155 (quoting 15 U.S.C. § 1125(a)).  A claim alleging this type of misappropriation is known as a "false endorsement" claim.  "The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services."  *Roberts v. Bliss*, 229 F. Supp. 3d 240, 248 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).  "A plaintiff may assert a false endorsement claim only if the defendant is using his likeness without permission."  *Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 133 (S.D.N.Y. 2014).

Similarly, section 50 of the New York Civil Rights Law prohibits the "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person."  N.Y. Civ. Rights Law § 50.  Under section 51 of the New York Civil Rights Law, a person is entitled to injunctive relief or damages for violations of section 50.  *See id.* § 51.  "A Section 51 claim 'must demonstrate each of four elements: (1) usage of plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's written consent.'"  *Comolli v. Huntington Learning Ctrs., Inc*., 180 F. Supp. 3d 284, 288 (S.D.N.Y. 2016) (quoting *Molina v. Phoenix Sound Inc*., 747 N.Y.S.2d 227, 230 (1st Dep't 2002)), *aff'd*, 683 F. App'x 27 (2d Cir. 2017).

Plaintiff alleges that Defendants' "use of [Plaintiff's] likeness to promote their band and their live performances" was in violation of the Lanham Act and New York Civil Rights Law because the promotions containing Plaintiff's likeness were "released without [his] authorization

6

or approval."  Compl. ¶¶ 107, 116.  However, the Agreement specifically grants Defendants "the worldwide right in perpetuity to use and publish and to permit others to use and publish [Plaintiff's] name, likeness, voice and other biographical material in connection with [Plaintiff's] services and performances hereunder."  Agreement ¶ 4.  Under the express terms of the Agreement, therefore, Plaintiff's likeness could be used *in perpetuity* so long as the material was created "in connection with [Plaintiff's] services and performances hereunder"—in other words, if it was created while Plaintiff was a member of The Roots and in connection with his membership.

Plaintiff concedes that Defendants "used Plaintiff's likeness in connection with performances of The Roots."  ECF No. 31 at 15.  Plaintiff argues, however, that the Agreement limits the use of Plaintiff's likeness to the time period when he was associated with The Roots. *See id.* at 15–16.  The Court disagrees.  This interpretation of paragraph 4 would render the term and clear intent that the use of Plaintiff's likeness be permitted "in perpetuity" meaningless, because it would provide that Defendants are not, in fact, permitted to use Plaintiff's likeness in perpetuity, but only as long as he is a member of The Roots.  "Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."  *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks and citation omitted) (ellipsis in original).  "Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect."  *Id.* (internal quotation marks and citation omitted).  Thus, when interpreting a contract, a court must "consider the

entire contract" and "choose the interpretation . . . which best accords with the sense of the remainder of the contract."  *Id.* (internal quotation marks and citation omitted).[4]

Here, Defendants' interpretation of paragraph 4 as "authoriz[ing] the use and publication of Plaintiff's likeness for promotion of The Roots in perpetuity," ECF No. 30 at 20, so long as it was created "in connection with [Plaintiff's] services and performances hereunder," Agreement ¶ 4, best accords with the remainder of the contract because it does not make "in perpetuity" superfluous.  *See CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 51 (2d Cir. 2016) ("It is well-established that we disfavor readings of a contract that render provisions of an agreement superfluous."); *see also Columbus Park Corp. v. Dep't of Hous. Pres. & Dev.*, 80 N.Y.2d 19, 31 (1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation.").

Moreover, Defendants' ability to use, in perpetuity, images of Plaintiff created while he was performing with The Roots is further supported by the remainder of the clause. Paragraph 4 allows for the use, in perpetuity, of Plaintiff's "likeness in connection with any audio or video recordings."  Agreement ¶ 4.  Additionally, the beginning of the clause states that Plaintiff "hereby grant[s] to [Defendants] all rights of every kind and nature in and to the results and proceeds of [Plaintiff's] services and performances rendered hereunder, including, without limitation, the complete, unconditional and exclusive ownership of [Plaintiff's] performances and all master recordings in connection with [his] services hereunder."  *Id.* Reading the clause in its entirety, Plaintiff's interpretation would mean that The Roots could only use audio and video recordings containing Plaintiff's "name, likeness, [or] voice" while

---

[4]  Similarly, contract construction which "render[s] certain other contractual provisions superfluous or illusory" is "disfavored" under Pennsylvania law.  *Walney v. SWEPI LP*, No. 13 Civ. 102, 2018 WL 4076919, at *5 (W.D. Pa. Aug. 27, 2018).

Plaintiff was a member of The Roots.  However, a band's success and legacy is predicated, in large part, on its ability to use and publish its past audio or video recordings.  From 2002 through March 2017, Plaintiff performed with The Roots and "produced and collaborated on many songs as a member of The Roots."  Compl. ¶ 67.  Plaintiff's interpretation of paragraph 4 would therefore handicap Defendants' ability to use recordings of these performances and songs—which also contain Plaintiff's likeness or voice—anytime after May 2017, when he was fired from The Roots.  All of The Roots' audio and video recordings involving Plaintiff made from 2002 to 2017 would be lost forever.

The entire intent of this clause would be eroded if it was construed to mean that The Roots could only use audio or video recordings containing Plaintiff's likeness while he was actively engaged with The Roots.  This interpretation would render "in perpetuity" meaningless and is at odds with the intent of the parties.  *See Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000) ("In reviewing a written contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use."); *see also Duffey*, 14 F. Supp. 3d at 130 ("Contract terms are construed with the primary aim of ascertaining the intent of the parties as expressed in the contract, known as their objective intent." (internal quotation marks and citation omitted)).  Here, the intent of the parties was to grant to Defendants "the worldwide right in perpetuity to use and publish . . . [Plaintiff's] name, likeness, voice and other biographical material in connection with [his] services and performances hereunder."  Agreement ¶ 4.  Thus, the terms of the Agreement are clear and unambiguous that Plaintiff consented to Defendants' use of his likeness *in perpetuity*, so long as the material was created while Plaintiff was a member of The Roots— i.e., it is material that was created "in connection with [Plaintiff's] services and

performances."  Agreement ¶ 4.

*Duffey v. Twentieth Century Fox Film Corp.* is instructive on this point.  In that case, defendants used images of the actor Todd Duffey from his performance in the film *Office Space* to sell *Office Space* merchandise.  14 F. Supp. 3d at 125, 133.  The *Duffey* court concluded that Duffey could not state a Lanham Act claim because he signed an "unambiguous" agreement that granted the defendants "the right to use his image for commercial purposes in connection with his performance."  *Id.* at 133.  Because defendants "used images of Duffey's performance" from the film on the film's merchandise, the agreement precluded any Lanham Act claims.  *Id.*  The *Duffey* contract granted defendants "in perpetuity" "the right to use and display [Duffey's] . . . likeness for commercial . . . purposes in connection therewith."  *Id.* at 132 (alterations and ellipses in original).  Similarly, here, the Agreement grants defendants the right, in perpetuity, to use any materials created "in connection with [Plaintiff's] services and performances hereunder."  Agreement ¶ 4.  And, here too Plaintiff alleges that Defendants used images of his performance with The Roots to promote a concert in which he did not perform and which occurred after he had been fired from the group.  Compl. ¶ 76; *see also* ECF No. 70-2 ¶ 57.

Accordingly, that portion of the Order which held that the Agreement grants Defendants the right to use Plaintiff's likeness in perpetuity only if the use is in connection with Plaintiff's services and performances, Order at 9–10, is hereby VACATED and AMENDED to hold that the Agreement unambiguously grants Defendants the right to use and publish Plaintiff's likeness in perpetuity in any promotional materials that were created while he performed with The Roots.  *See Duffey*, 14 F. Supp. 3d at 130 ("Courts must interpret unambiguous contract language as a matter of law.").

However, because Plaintiff also alleges that the Agreement is not valid,[5] and the Court declined to address this argument in its Order, *see* Order at 9, the Court will not dismiss Plaintiff's Lanham Act and New York Civil Rights Law claims at this time and orders further briefing on this issue.

## CONCLUSION

For the foregoing reasons, the Order is partially VACATED and AMENDED as stated above.  The Court holds that Plaintiff unambiguously granted Defendants the right to use and publish his likeness in perpetuity in any promotional materials that were created while he performed with The Roots.

In light of the foregoing, Plaintiff's and Defendants' cross-motions for summary judgment are DENIED without prejudice to renewal.  The Court holds in abeyance a decision on whether Plaintiff's Lanham Act and New York Civil Rights Law claims should be dismissed until the parties submit briefing on this issue.  Therefore, by **July 18, 2019**, the parties shall file revised motions for summary judgment addressing whether the Agreement is valid and whether there is a triable issue of fact.  By **August 1, 2019**, the parties shall file their oppositions, and by **August 8, 2019**, they shall file their replies, if any.

The Clerk of Court is directed to terminate the motions at ECF Nos. 69 and 71.

SO ORDERED.

Dated: June 20, 2019
     New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] Plaintiff alleges that he signed the Agreement "under duress" because it was "handed to him immediately before the first show in March 2009" and "he did not have the opportunity to retain an attorney or professional to review the Agreement." Compl. ¶¶ 59–61.  Plaintiff also alleges that the Agreement was only for a 12-month term. *Id.* ¶ 65.  And the parties dispute whether the Agreement expired when Late Night ended in 2013 or whether it continued to govern the parties' relationship while The Roots and Plaintiff performed on the Tonight Show. *Compare* ECF No. 31 at 7–8, *with* ECF No. 32 at 5–8.